```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,
                                                04-CR-6077T

               v.                               DECISION
                                                and ORDER
MOHAMED SUBEH,


                         Defendant.
_____
```

## INTRODUCTION

Defendant Mohamed Subeh ("Subeh") is charged in a three-count Indictment with making materially false, fictitious and fraudulent statements to a Special Agent of the Federal Bureau of Investigation ("FBI") in violation of 18 U.S.C. § 1001(a)(2). Specifically, the Indictment alleges that on May 23, 2003, Subeh made three false statements to FBI Special Agent Joseph Testani and/or other investigators regarding Subeh's brother Ismail Dorgham. The Indictment charges generally that in an effort to conceal his brother's intentions of becoming a suicide bomber in Israel, Subeh lied about his brother's reasons for wanting to leave the United States.

On July 21, 2004, the defendant filed an omnibus motion seeking, inter alia, suppression of statements and evidence, dismissal of the Indictment, production of a bill of particulars, and disclosure of Grand Jury minutes.

By Order dated April 30, 2004, this case was referred to Magistrate Judge Marian W. Payson for pretrial proceedings. Pursuant to that Order, Judge Payson held a hearing over the course of six days on defendant's motions. On January 24, 2006, Judge Payson issued a Decision and Order and Report and Recommendation recommending, <u>inter alia</u>, that defendant's motion to dismiss Counts One and Two of the Indictment be denied, but that defendant's motion to dismiss Count Three of the Indictment be granted. Judge Payson also granted defendant's motion for a bill of particulars, and pursuant to that Order, directed the government to disclose whether or not the false statements made by Subeh were made in response to direct questions by the interviewing agents, and if so, what the questions were. <u>See</u> January 24, 2006 Decision and Order at p. 52.

By Objection filed April 13, 2006, the Government objects to (1) Judge Payson's Report and Recommendation that Count Three of the Indictment be dismissed, and (2) Judge Payson's Order granting defendant's request for a bill of particulars. With respect to the Report and Recommendation, the Government contends that Judge Payson improperly concluded that dismissal of Count Three was warranted on grounds that the statement at issue could not be proven false. The Government argues that it can prove that Subeh's statement was false, and therefore it should be allowed to present its case to the Jury as alleged in Count Three.

With respect to Judge Payson's Order granting defendant's request for a bill of particulars which directs the Government to indicate whether or not Subeh's allegedly false answers were given in response to direct questions, and if so, what those questions were, the Government objects on grounds that the defendant failed to adequately articulate a justifiable need for the information sought.  The Government also contends that it is impossible to provide the information sought, and that because the Magistrate acknowledged that the Indictment sufficiently and adequately apprised the defendant of the charges against him, there is no basis for granting the request for a bill of particulars.

For the reasons set forth below, I affirm and adopt Judge Payson's Report and Recommendation and Decision and Order in its entirety, and grant defendant's motion to dismiss Count Three defendant's request for a bill of particulars.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1), after the filing of a Report and Recommendation, any party may serve and file written objections to such proposed findings and recommendations.  After such filing,

> [a] judge of the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.

28 U.S.C. § 636(b)(1). A district court, however, may not reject the credibility findings of a Magistrate Judge without conducting an evidentiary hearing in which the district court has the opportunity to observe and evaluate witness credibility in the first instance. <u>Cullen v. United States</u>, 194 F.3d 401 (2nd Cir. 1999).

Objections to Orders of the Magistrate are governed by 28 U.S.C. § 636(b)(1)(A), which provides in relevant part that Orders relating to pretrial matters which are clearly erroneous or contrary to law may be reconsidered by a judge of the court. 28 U.S.C.A. § 636(b)(1)(A) (West 1993). I apply these standards to the following analysis.

BACKGROUND

The relevant facts of this case were set forth in Judge Payson's Report and Recommendation, and familiarity with those facts is presumed. In summary, on May 3, 2003, defendant Muhamed Subeh went to the Greater Rochester (New York) International Airport in an attempt to prevent his brother Ismail Dorgham from leaving the country. Dorgham was traveling to the Middle East, and prior to leaving, had written a letter indicating that he would be traveling to Israel for the purpose of becoming a suicide bomber.

When Subeh arrived at the Rochester Airport, he sought permission to pass through a security checkpoint for the purpose of

contacting his brother. Subeh was not allowed past the checkpoint, and so he asked a law enforcement officer, a Sergeant Pratt ("Pratt") of the Monroe County Sheriff's Department, to bring Dorgham to him. Sergeant Pratt found Dorgham, but because Dorgham did not want to see Subeh, Pratt was unable to bring Dorgham back from the terminal area to the unsecured area of the airport where Subeh was waiting. After learning that Dorgham did not want to see him, Subeh allegedly told Sergeant Pratt that he wanted to prevent his brother from leaving the country because if his brother left, his brother's immigration status would be jeopardized. When Dorgham still refused to see his brother, Subeh allegedly told Pratt that Dorgham may have stolen money from the retail store operated by Subeh, and therefore Dorgham should be detained. Another officer investigated the claim, but upon finding no evidence of theft, allowed Dorgham to continue with his scheduled travel.

Subeh claims that he then left the airport, but returned later for the purpose of taking a flight to Detroit, Michigan, in an attempt to reach his brother. Officer Pratt observed Subeh at the airport, and after Subeh missed a flight, asked Subeh about his brother, and whether or not his brother was going to do something harmful. Subeh allegedly answered that he did not know, and consented, at Pratt's suggestion, to speak to an FBI agent.

Thereafter, Subeh was taken to a private location at the airport, and was questioned by FBI agent Testani. Following approximately two hours of questioning, Subeh left to take a flight to Detroit in an effort to join his brother.

Following Subeh's questioning, the authorities obtained and executed several search warrants based on a belief that Dorgham was engaged in terrorist activities. On June 7, 2003, approximately two weeks after Subeh was interviewed by FBI agent Testani, law enforcement officers conducted a search of Subeh's store. Testani asked Subeh to come to the store, and once Subeh arrived, asked Subeh to accompany him to the Federal Building in Rochester for further questioning. Subeh agreed, and was taken to the Federal Building where he was questioned for approximately four to five hours before being released.

## DISCUSSION

I. <u>Motion to Dismiss Count Three of the Indictment</u>

Count Three of the Indictment charges Subeh with making a materially false, fictitious, or fraudulent statement or representation to a Special Agent of the Federal Bureau of Investigation in violation of 18 U.S.C. § 1001(a)(2). Specifically, in its entirety, Count Three of the Indictment charges that:

> On or about the 23rd day of May, 2003, in the Western District of New York, in a matter

>within the jurisdiction of the executive branch of the Government of the United States, to wit: an investigation into possible terrorist activities being conducted by the Federal Bureau of Investigation, an agency of the Department of Justice of the United States, the defendant, MOHAMED SUBEH, did knowingly and willfully make a materially false, fictitious and fraudulent statement and representation; that is, in response to a question as to whether a man whose identity is known to the Grand Jury was interested in becoming a suicide bomber, the defendant, MOHAMED SUBEH, told a Special Agent of the Federal Bureau of Investigation and a member of the Joint Terrorism Task Force sponsored by the Federal Bureau of Investigation that he could not answer that question one way or another; when in point of fact, and as the defendant then and there well knew, the man whose identity is known to the Grand Jury was interested in becoming a suicide bomber in the country of Israel on behalf of the foreign terrorist organization Al-Aqsa Martyr's Brigade,
>All of the above in violation of Title 18, United States Code, Section 1001 (a)(2).

Indictment at pp. 4-5.

The defendant moves to dismiss Count Three of the Indictment on grounds that, <u>inter alia</u>, the statement at issue in Count Three is literally true, and therefore, Count III fails to state an offense for which he may be prosecuted. Specifically, Subeh contends that by stating that he could not answer the question one way or another when asked whether or not his brother was interested in becoming a suicide bomber, he responded truthfully to the question because in fact, he could not know whether or not his brother was interested in becoming a suicide bomber.

In her thorough and comprehensive January 24, 2006 Report and Recommendation, Judge Payson recommended that the court grant defendant's motion to dismiss Count Three of the Indictment on grounds that Subeh's statement that he could not answer the question "one way or the other" as to whether or not his brother was interested in becoming a suicide bomber can not, as a matter of law, be false. Judge Payson reasoned that because the question asked of Subeh was directed to his brother's state of mind, and because Subeh could not conclusively know what his brother's state of mind was, Subeh's response that he could not answer the question can not be false, and indeed, was true. As Judge Payson stated:

> "[w]hether Subeh's brother was truly interested in becoming a suicide bomber is something only his brother could have known; although Subeh may have suspected that his brother was interested, and may have even been told by Dorgham that he was interested, Subeh could not have conclusively known his brother's true intentions. Thus, his response that he could not answer one way or another, even if it had been intentionally evasive or misleading, could not have been false."

Report and Recommendation at p. 25-26. (citations omitted).

The government object's to Judge Payson's Report and Recommendation on grounds that because Subeh knew that his brother wanted to become a suicide bomber, his response that he could not answer the question of whether or not Dorgham was interested in becoming a suicide bomber was false. In support of this argument, the government contends, <u>inter</u> <u>alia</u>, that Subeh had seen a

"martyrdom letter" written by Dorgham in which Dorgham expressed his intent to become a suicide bomber. The government argues that because Subeh himself believed that Dorgham was interested in becoming a suicide bomber, he lied when he told an investigator that he could not answer the question of whether Dorgham was interested in becoming a suicide bomber.

    I find the government's objection to be without merit. In this case, Subeh was asked whether or not Dorgham had any interest in becoming a suicide bomber. That question is directed to Dorgham's state of mind, not Subeh's. Accordingly, Subeh's opinions or beliefs about Dorgham's intentions are immaterial, as such opinions and beliefs would reveal Subeh's state of mind, not Dorgham's. Because Dorgham's state of mind is at issue, and not Subeh's, evidence that Subeh had seen the martyrdom letter and himself believed that Dorgham intended to become a suicide bomber is irelevant to the question of whether Dorgham himself held an interest in becoming a suicide bomber. While the letter certainly suggests that Dorgham had intentions of becoming a suicide bomber, Subeh could only speculate as to what his brother's true intentions were, and because Subeh was not asked by investigators about his own opinion, but was instead asked about Dorgham's intentions, his statement that he could not answer a question about his brother's state of mind was not false, and indeed, was true.

Indeed, because Subeh could only speculate as to his brother's intentions, if the question had been asked of him as a witness during a trial in a court of law, Subeh would not have been allowed to answer because he is not competent to testify as to what someone else's state of mind was. See e.g. Fenje v. Feld, 301 F.Supp.2d 781 (N.D. Ill., 2003)(while a witness may testify as to his own state of mind, and may testify subject to applicable limitations about another person's actions or statements, a witness is not competent to testify as to another person's state of mind); Ferrar v. Federal Kemper Life Assurance Co., 198 F.Supp.2d 940 (S.D. Ohio, 2002)(witness' testimony based on her own belief of her deceased husband's belief was inadmissible as incompetent); U.S. v. Popejoy, 578 F.2d 1346 (10th Cir. 1978)(witness not permitted to testify where question asked of witness would require him to "interpret the mind" of the defendant). While the court is mindful that under Rule 701 of the Federal Rules of Evidence a witness may offer an opinion of another's state of mind, provided that the opinion is based on rational conclusions drawn from observations made by the witness, in this case, Subeh was not asked his opinion of what his brother's intentions were, but instead was asked directly whether or not his brother was interested in becoming a suicide bomber.

The government objects to the characterization that the question asked of Subeh related to Dorgham's state of mind. The question, however, speaks for itself. According to the Indictment,

Subeh was asked whether or not Dorgham was interested in becoming a suicide bomber. That question asks Subeh what his brother's intentions are, and accordingly, the issue goes to Dorgham's state of mind. Subeh was not asked whether he himself believed that Dorgham might become a suicide bomber, or whether Dorgham had engaged in acts which led Subeh to conclude that Dorgham might become a suicide bomber--questions which are directed to Subeh's state of mind, not Dorgham's. Instead, because he was asked about Dorgham's state of mind, his response that he could not answer the question was neither false nor misleading.

The government argues that Judge Payson incorrectly determined that one person can not conclusively know the intent of another, and therefore, it was incorrect to hold that Subeh could not have known for sure what Dorgham's intentions were. In support of this argument, the government contends that juries in criminal cases are often required to determine the intent of another person, and therefore Subeh could have known what his brother's intentions were. Jurors, however, are charged with making a finding of another person's intentions based upon inferences drawn by the jury collectively from the evidenceabout that person's behavior subject to the applicable standard of proof, often-times requiring proof beyond a reasonable doubt. By requiring juries to find intent under a reasonable doubt standard, the law recognizes that intent can not be proven to a certainty because "there is no way of

11

fathoming or scrutinizing the operations of the human mind." <u>Federal Jury Practice and Instructions</u> Volume 1A, § 17.07. Accordingly, the law recognizes that a person cannot know conclusively what the intentions of another person are.

Moreover, even if Subeh did form an opinion about his brother's intent (as the government contends) Subeh's opinion is not proof of his brother's intent, and therefore, evidence of Subeh's opinion, and the basis on which he formed that opinion, is not probative on the issue of whether Dorgham intended to become a suicide bomber. Simply put, the government cannot prove Dorgham's intent to become a suicide bomber with proof that Subeh believed Dorgham intended to become a suicide bomber.

Finally, with respect to the issue of intent, Accepting the government's argument that Subeh could have and in fact did know his brother's intent would lead to the absurd result that if Subeh had any opinion as to what his brother's intentions were, he would be required to offer his opinion–under penalty of imprisonment-- when asked about his brother's state of mind. If that were the case, Subeh could be prosecuted for lying to authorities if he did not truthfully express his opinion, regardless of what Dorgham's true intentions were. For example, if Dorgham had <u>falsely</u> expressed to his brother that he was interested in becoming a suicide bomber, when in fact he had no such intention at all, Subeh could be prosecuted for lying to authorities if he denied that his

brother had intentions to become a bomber, <u>even though the statement would be factually true</u>. This absurd result exposes the faulty premise upon which the government's prosecution is based: that an individual may be prosecuted for acknowledging his inability to truthfully answer a question about another person's state of mind. If such a prosecution were to be allowed, a defendant could be prosecuted for falsely portraying his opinion about another person's state of mind, without regard to that person's actual state of mind.

The government further objects that Judge Payson improperly relied on the case of <u>United States v. Lighte</u>, 782 F.2d 367 (2nd Cir. 1986) in finding that Subeh's statement was not false as a mater of law. In <u>Lighte</u>, the defendant was asked under oath why a third-party told the defendant that he was setting up an account in the defendant's name. The Court of Appeals held that Lighte's answer, that he didn't know, was literally true because Lighte could "truthfully respond that he did not know the reasoning underlying [another person's] behavior." <u>Lighte</u>, 782 F.2d at 374. Judge Payson found the Second Circuit's reasoning in <u>Lighte</u> to be applicable in this case, in which Subeh is being accused of making a false statement with respect to his brother's intentions. The government contends that because perjury prosecutions are prosecuted under a different statute subject to different legal

standards, the Magistrate inappropriately relied on the <u>Lighte</u> case in support of her Recommendation in this case.

I reject the government's objection, and find that Judge Payson properly relied on the <u>Lighte</u> case making her Recommendation. The central proposition for which <u>Lighte</u> was cited was that a person cannot definitively know another person's state of mind, and therefore, when asked about another person's state of mind, the answer "I don't know" cannot, as a matter of law, be false. That proposition is applicable in either a perjury prosecution, or a prosecution under 18 U.S.C. § 1001(a)(2). Accordingly, I find that Judge Payson properly cited the <u>Lighte</u> case in support of her Recommendation.

Finally, the government warns that by dismissing Count Three of the Indictment, the Court is allowing persons with knowledge of potential terrorist activities to give false statements to law enforcement officers about that knowledge, and suggests immunizing persons in such a way is not "sound policy." Dismissing Count Three, however, offers no such immunization for persons who lie to federal law enforcement agents about any issue, whether or not the issue involves terrorism, and creates no new policy. Rather, by dismissing Count Three of the indictment, this court simply and carefully holds that a person who states that he cannot answer a question that is directed to another person's state of mind cannot be subjected to imprisonment for failing to speculate as to what

the person's state of mind may be.  I therefore grant defendant's motion to dismiss count three of the Indictment.

    II.  Motion for a Bill of Particulars.

    In his July 21, 2004 motion, defendant moved for a bill of particulars requesting, inter alia, particularization of the context in which the allegedly false statements were made, and, if the statements were made in response to a question, the exact wording of the questions the government intends to introduce. Judge Payson granted the defendant's motion in part, directing the government to provide a bill of particulars stating "(1) whether the allegedly false statements attributed to Subeh in Counts One and Two were made in direct response to any questions posed by interviewing agents; and (2) if so, what those questions were." Report and Recommendation at pp. 49-50.

    The government objects to Judge Payson's Decision and Order on several grounds.  First, the government argues that the defendant failed to articulate any facts upon which the Magistrate could find that he had established a need for a bill of particulars.  Second, the government argues that because there is no transcript of the questioning of Subeh, it is impossible to articulate the exact questions asked of him or statements made to him.  Finally, the government objects that because Judge Payson found the Indictment to be adequate in terms of apprising Subeh of the charges against

15

him, there is no basis for granting the defendant's motion for a bill of particulars.

As stated above, when reviewing the Order of a Magistrate Judge, a District Court Judge may reverse that Order only if it is found to be clearly erroneous or contrary to law.  Because I find that Judge Payson's Order is neither clearly erroneous nor contrary to law, I deny the government's objection.  With respect to the government's contention that because there is no transcript of the questioning of Subeh, it cannot articulate the precise questions or statements that were made to the defendant during that questioning, I note that Judge Payson was well aware of that fact.  The lack of a transcript, however, has not prevented the government from charging Subeh with making specific statements during that questioning, and just as the government was able to precisely identify his statements despite the absence of a transcript, the government should be able to comply with Judge Payson's Order directing the government to identify whether or not Subeh's statements were made in response to direct questions, and if so, to identify the questions asked.

III. <u>Excludable Time</u>

By Letter Order dated May 10, 2006, I granted, <u>sua</u> <u>sponte</u>, defendant additional time to file objections to the January 24, 2006 Report and Recommendation and Decision and Order of Magistrate

Judge Payson. By motion dated May 19, 2006, the government moved to have the matter of its objections to the January 24, 2006 Decision and Order of Magistrate Judge Payson deemed submitted on grounds that the defendant had not filed any objections. By motion dated June 21, 2006, the government renewed its motion to have the matter deemed submitted.

I grant the government's June 21, 2006 motion, and deem this matter submitted to the court as of June 21, 2006. Accordingly, for purposes of the Speedy Trial Act, the time from January 24, 2006 through the date of this Order shall be considered excludable time.

ALL OF THE ABOVE IS SO ORDERED.

S/ Michael A. Telesca

_____
Michael A. Telesca
United States District Judge

DATED: Rochester, New York
July 5, 2006